# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| Caitlin Hudson,<br><br>        Plaintiff,<br><br>   -v.-<br><br>Equifax Information Services, LLC,<br>Experian Information Solutions, Inc.,<br>Trans Union, LLC,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Caitlin Hudson, brings this Complaint by and through counsel, against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"), (Equifax, Experian, and Trans Union each referred to herein as a "Bureau" and collectively referred to as "Bureaus"), and respectfully sets forth, complains, and alleges, upon information and belief, the following:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as well as 15 U.S.C. § 1681p *et seq*.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here, the Plaintiff resides here, and the Defendants transact business here.

3. Plaintiff brings this action for damages arising from each Defendant's violations of 15 U.S.C. § 1681 *et seq*., also known as the Fair Credit Reporting Act ("FCRA").

## PARTIES

4. Plaintiff is a resident of the State of Delaware, County of Sussex.

5. At all times material hereto, Plaintiff was a "consumer" as defined under 15 U.S.C. § 1681a (c).

6. Defendant Equifax Information Services, LLC is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

7. Equifax is a Georgia limited liability company registered to do business in this State.

8. Equifax may be served with process c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

9. Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

10. At all times material hereto, Equifax disbursed such consumer reports to third parties under a contract for monetary compensation.

11. Defendant Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

12. Experian is an Ohio corporation registered to do business in this State.

13. Experian may be served with process c/o The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

14. Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

15. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

16. Defendant Trans Union is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

17. Trans Union is a Delaware limited liability company registered to do business in this State.

18. Trans Union may be served with process c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

19. Trans Union is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

20. At all times material hereto, Trans Union disbursed such consumer reports to third parties under a contract for monetary compensation.

## FACTUAL ALLEGATIONS

21. Plaintiff incorporates the above allegations as if set forth here.

### Background

22. Prior to the events described below, Plaintiff had been the victim of identity theft that she resolved and which even led her to obtain a new social security number.

23. Plaintiff believed this issue of identity theft was behind her, as it had been for a number of years.

24. However, Plaintiff more recently yet again became the victim of identity theft.

25. The identity thief used Plaintiff's personal information to apply for multiple lines of credit from multiple entities.

26. This recently came to Plaintiff's attention when she was denied for a mortgage on the basis of her credit report.

27. Upon review, Plaintiff noticed accounts on her credit report from each Bureau that did not belong to Plaintiff.

28. Many of these accounts had been previously on Plaintiff's credit reports in 2021 but were removed as a result of Plaintiff's disputes of them as the products of identity theft.

29. Plaintiff did not apply to any of the companies on the subject accounts for credit.

30. Plaintiff was unaware of these accounts and did not authorize anyone to open them in her name or on her behalf.

31. The accounts were fraudulent.

32. Plaintiff realized she was yet again the victim of identity theft or, in the alternative, another individual's credit information was mixed with Plaintiff's.

33. On or about April 30, 2024, Plaintiff filed several complaints with the Consumer Financial Protection Bureau ("CFPB").

34. The Complaint ID numbers are:

   a. 240430-14127695 ("Complaint 1")

   b. 240420-14127666 ("Complaint 2")

   c. 240430-14127667 ("Complaint 3")

   d. 240430-14127541 ("Complaint 4")

   e. 240430-14127478 ("Complaint 5")

   f. 240430-14127479 ("Complaint 6")

   g. 240430-14126784 ("Complaint 7," each of Complaints 1-7 individually a Complaint, and collectively, "Complaints").

Case 1:24-cv-01307-UNA   Document 1   Filed 12/03/24   Page 5 of 19 PageID #: 5

35. On or about May 1, 2024, Plaintiff also filed a police report with the Delaware State Police.

36. The police report number is 04-24-026945 ("Police Report").

37. A Police Report is acceptable proof of identity theft to block items in a consumer's credit report as disputed for being fraudulent.

38. Upon receipt of notice of identity theft, each Bureau is required to block the disputed information pursuant to 15 U.S.C. § 1681c-2.

Violations

39. Plaintiff notified Experian and Trans Union that she disputed the accuracy of the information they were reporting in a letter dated May 22, 2024. Plaintiff notified Equifax that she disputed the accuracy of the information it was reporting in a letter dated August 8, 2024 ("Dispute").

40. In her Dispute, Plaintiff included a description of the identity theft, Police Report, her address, her social security information, her telephone number, and a copy of her ID.

41. The accounts disputed to Equifax were:

   a. ARMED FORCES BANK/BANK MIDWEST,

   b. AUSTIN CAPITAL BANK,

   c. CONNEXUS CREDIT UNION,

   d. FORD MOTOR CREDIT/FMC-OMAHA SERVICE CT,

   e. GRAIN TECHNOLOGY INC,

   f. LENDMARK FINANCIAL,

   g. SELF FINANCIAL/LEAD BANK (two accounts), and

   h. SUNRISE BANK/SBNASELFLNDR.

42. The accounts disputed to Experian were:

    a. ARMED FORCES BANK/BANK MIDWEST,

    b. AUSTIN CAPITAL BANK,

    c. CLERKIE LENDING LLC,

    d. CONNEXUS CREDIT UNION,

    e. CREDIT CONTROL CORP,

    f. FORD MOTOR CREDIT/FMC-OMAHA SERVICE CT,

    g. GRAIN TECHNOLOGY INC,

    h. LENDMARK FINANCIAL,

    i. SELF FINANCIAL/LEAD BANK (two accounts), and

    j. SUNRISE BANK/SBNASELFLNDR.

43. The accounts disputed to Trans Union were:

    a. ARMED FORCES BANK/BANK MIDWEST,

    b. AUSTIN CAPITAL BANK,

    c. CONNEXUS CREDIT UNION,

    d. FORD MOTOR CREDIT/FMC-OMAHA SERVICE CT,

    e. GRAIN TECHNOLOGY INC,

    f. LENDMARK FINANCIAL,

    g. SELF FINANCIAL/LEAD BANK (two accounts), and

    h. SUNRISE BANK/SBNASELFLNDR.

(each of these respective accounts listed above individually an "Account", and collectively and respectively for each Bureau as appropriate, "Accounts").

44. Despite this, and subsequent to this, many of the accounts remained on Plaintiff's credit report from each Bureau.

45. Subsequent to the Dispute, Plaintiff's Equifax credit report still contained the accounts from Armed Forces Bank/Bank Midwest, Austin Capital Bank, Lendmark Financial, Self Financial/Lead Bank (two accounts), and Sunrise Bank/SBNASELFLNDR.

46. Subsequent to the Dispute, Plaintiff's Experian and Trans Union credit report still contained all the disputed Accounts except Experian removed Credit Control Corp and Clerkie Lending LLC.

47. Despite the Dispute, the respective Accounts and fraudulent balances remained on Plaintiff's credit report from each Bureau subsequent to the Dispute.

48. Each Bureau was reporting the respective Accounts and balances on Plaintiff's credit reports.

49. On information and belief, on date(s) better known to each Bureau, each Bureau issued credit reports concerning the Plaintiff that included the respective Accounts.

50. On information and belief, on date(s) better known to each Bureau, it issued credit reports concerning the Plaintiff that included respective Account tradelines.

51. Each Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

52. Upon receipt of the Dispute(s) of the respective accounts each Bureau failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff about the respective disputed Account(s).

53. Had each Bureau conducted a reasonable investigation it would have been revealed to it that its respective Account information was inaccurate.

54. Each Defendant was in receipt of the evidence showing that the reported information was inaccurate.

55. Despite the Dispute(s) by the Plaintiff that the information on her consumer report was inaccurate with respect to the respective disputed Account(s), each Defendant did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account(s) was inaccurate.

56. None of the Defendants called Plaintiff to discuss her Dispute(s).

57. This is despite the fact that Plaintiff provided her phone number in her Dispute(s).

58. None of the Defendants mailed any correspondence to Plaintiff to discuss her Dispute(s) or to assist in its investigation or reinvestigation of the Account, even in light of the fact that Plaintiff provided her mailing address in her Dispute(s).

59. None of the Defendants emailed any correspondence to Plaintiff to discuss her Dispute(s) or to seek Plaintiff's assistance in their investigation or reinvestigation of the Account(s), even in light of the fact that Plaintiff provided her email address in her Dispute(s).

60. Upon information and belief, none of the Defendants called the State Police or the CFPB to discuss the Dispute(s).

61. Upon information and belief, none of the Defendants emailed the State Police or the CFPB to discuss the Dispute(s).

62. Upon information and belief, none of the Defendants sent any correspondence by mail to the State Police or the CFPB to discuss the Dispute(s).

63. Unbeknownst to Plaintiff, at some point between 2021 and 2024, many of these Accounts that had been previously removed upon Plaintiff's disputes for being fraudulent, were improperly reinserted on her credit report by each Bureau.

64. Defendants never notified Plaintiff that the previously deleted account(s) were reinserted in her credit file and credit report.

65. The respective Accounts were improperly placed on Plaintiff's credit report by each Defendant despite the fact that the Accounts were the result of fraud.

66. Each Bureau's actions described herein violated 15 U.S.C. § 1681i.

67. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit reports.

68. Each Bureau further violated 15 U.S.C. § 1681c-2 (a) (Block of information resulting from identity theft).

69. In addition, after being removed due to prior dispute(s), each Bureau improperly reinserted some of the accounts on Plaintiff's credit report.

70. Before reinserting the Accounts, each Bureau was required to receive certification from the respective alleged creditor that the information is complete and accurate.

71. Each Bureau violated 15 U.S.C. § 1681i (a)(5)(B)(i) by failing to receive the necessary certification before reinsertion.

72. When reinserting a previously deleted account, each Bureau was required to provide Plaintiff with written notification within five days of the reinsertion.

73. Each Bureau violated 15 U.S.C. § 1681i (a)(5)(B)(ii) by failing to provide the required notice that the Accounts were reinserted.

74. Before reinserting the Accounts, each Bureau was required by law to provide Plaintiff with certain additional information.

75. Each Bureau further violated 15 U.S.C. § 1681i (a)(5)(B)(iii) by failing to provide the additional information required to be provided to Plaintiff.

76. Each Bureau is required to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's consumer's file, and in consumer reports for the consumer, of information that was deleted.

77. Each Bureau further violated 15 U.S.C. § 1681i (a)(5)(C) by failing to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's file and consumer reports, of information that was previously deleted.

78. Notwithstanding Plaintiff's efforts, each Defendant continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

79. Each Defendant knew or had reason to know the information was inaccurate.

80. Each Defendant was in possession of the documentation of the inaccuracies and fraud of the respective Account(s), yet persisted in reporting it anyway.

81. Upon information and belief, none of the Bureaus requested any supporting documentation from each alleged creditor ("Furnisher") during any investigation(s) of Plaintiff's Dispute(s).

82. Upon information and belief, each none of the Furnishers sent any documentation to any Bureau during any investigation(s) of Plaintiff's Dispute(s).

83. Each Bureau's reporting of the above-referenced tradeline(s) continued to be inaccurate and materially misleading.

84. In response to Plaintiff's Dispute, Experian refused to block the tradelines, claiming, "your request to block was made in error, or, your request to block information was based on a material misrepresentation, or, you knowingly obtained or should have known that you obtained possession of goods, services, or moneys as a result of one or more of the transactions that you are seeking to block."

85. Experian's claim was false.

86. In response to Plaintiff's Dispute, Experian also requested "all pages of the identity theft report including validation that the report was filed with a federal, state or local law enforcement agency".

87. In response to Plaintiff's Dispute, Experian also requested "You full name…, Social Security number, Complete addresses for the past two years, Date of birth, One copy of a government issued identification card, such as a driver's license, state ID card, etc., One copy of a utility bill, bank or insurance statement, etc.

88. The aforementioned information was the very information Plaintiff had already sent to Experian. Accordingly, Experian's response made no sense.

89. In response to Plaintiff's Dispute, Trans Union refused to block the Accounts and stated that it "Received FTC Affidavit, also need Law Enforcement report".

90. However, Plaintiff never sent Trans Union an FTC affidavit. Plaintiff only sent her law enforcement report that she had filed with the State Police.

91. Trans Union also stated, "The document submitted does not appear to be a copy of an official, valid law enforcement report that we can accept as an Identity Theft report.

92. However, Plaintiff sent Trans Union the copy of the State Police report.

93. Trans Union also responded, "we have determined that your request has either a) been made in error; b) is a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods, services or money as a result of the transaction issue."

94. Trans Union's claim was false.

95. In response to Plaintiff's dispute, Equifax requested Plaintiff's driver's license.

96. Equifax also requested information about her social security number.

97. However, Plaintiff had already sent Equifax her driver's license and her social security number.

## Damages

98. As a result of each Defendant's failure to comply with the FCRA, Plaintiff has been damaged.

99. Each Defendant's erroneous reporting continues to affect Plaintiff's reputation, creditworthiness, and credit score.

100. Plaintiff suffered damage to her reputation as it falsely appears as if she is delinquent on the Accounts when she is not.

101. It also falsely appears as if Plaintiff owes money on the Accounts, when she does not.

102. This false information was published to numerous third parties.

103. This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's lawful financial affairs.

104. Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify each Defendant's willful and negligent actions, loss of credit, loss of ability to purchase

and benefit from credit, reputational harm, decreased credit score, a chilling effect on applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment for having false information on her credit report, for credit denial, and for having others see the false credit information.

105. Plaintiff was denied credit due to each Defendant's actions.

106. When applying for mortgage loan from Farm Credit East, ACA, Plaintiff was denied based on her Experian credit report for "Delinquent credit obligations."

107. When applying for an auto loan from Ally Bank, Plaintiff was denied based on her Trans Union credit report due to "Serious delinquency…[t]ime since delinquency too recent."

108. When applying for an auto loan from Ally Bank, Plaintiff was denied based on her Experian credit report due to "Serious delinquency… [t]ime since delinquency is too recent."

109. When applying for an auto loan from Capital One Auto Finance, Plaintiff was denied due to "too many delinquent past or present credit obligations."

110. When applying for a credit card with Citi, Plaintiff was denied based on her Equifax credit report due to "A delinquent credit obligation(s), either paid or unpaid, was recorded on your credit bureau report."

111. When applying for a credit card with Citizens Bank, Plaintiff was denied based on her Equifax credit report due to "Number of accounts with major derogatory event."

112. When applying for credit with American Credit Acceptance, Plaintiff was denied based on her LexisNexis Risk Solutions Bureau credit report based, upon information and belief, on information from Experian.

113. When applying for credit with Del-One Federal Credit Union, Plaintiff was denied based on her Experian credit report due inter alia to "recent delinquencies".

114. When applying for a credit card with Discover Bank, Plaintiff was denied due to "Serious delinquency, number of account with delinquency and time since delinquency is too recent."

115. When applying for an auto loan with Kia Finance, Plaintiff was denied based on her Trans Union credit report due to "Serious delinquency…"

116. When applying for a credit card with Wells Fargo, Plaintiff was denied due to "Serious delinquency…"

117. Plaintiff's credit report, other than these accounts, is excellent.

118. Each Defendant's actions have exacerbated, enabled, and lengthened the impact of the identity theft crimes against Plaintiff.

119. Plaintiff was left with no choice but to bring this action.

120. If Plaintiff's credit file is mixed with another consumer, then upon information and belief, each Bureau impermissibly shared Plaintiff's personal credit information with the person whose information appears on his report and/or others.

## FIRST CAUSE OF ACTION
**(Violations of the FCRA as to each Bureau)**

121. Plaintiff incorporates the allegations in the paragraphs above the First Cause of Action as if set forth here.

122. This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

123. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained or furnished concerning the Plaintiff.

124.     Each Bureau violated 15 U.S.C. § 1681i (a) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

125.     The FCRA has provisions that specifically govern disputes based on identity theft, yet each Bureau failed to comply with those provisions.

126.     When Plaintiff alleged identity theft and sent a valid identity theft report that was filed with law enforcement, each Bureau was required to stop reporting the fraudulent information in the Plaintiff's credit report. See 15 U.S.C. §§ 1681c-2(a), 1681a(q)(4); 12 C.F.R. § 1022.3(i)(1).

127.     The FCRA thus reflects congressional recognition that it is unreasonable for each Bureau not to block information that is contained in a credit report due to identity theft when the crime has been reported to law enforcement.

128.     Each Bureau further violated 15 U.S.C. § 1681c-2(a) (Block of information resulting from identity theft) by failing to block information in Plaintiff's credit report after receiving the Report.

129.     Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the Dispute to Furnishers or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from Furnishers.

130.     Each Bureau violated 15 U.S.C. § 1681i (a)(5)(B)(i) by failing to receive the necessary certification before reinsertion.

131. Each Bureau further violated 15 U.S.C. § 1681i (a)(5)(B)(ii) by failing to provide the required reinsertion notice to Plaintiff.

132. Each Bureau further violated 15 U.S.C. § 1681i (a)(5)(B)(iii) by failing to provide the information required to be provided to Plaintiff upon reinsertion.

133. Each Bureau violated 15 U.S.C. § 1681i (a)(5)(C) by failing to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's file and consumer reports, of information that was previously deleted.

134. Each Bureau has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

135. The failure of each Bureau to comply with the Act include but is not necessarily limited to:

   a. The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b. The failure to remove and/or correct the inaccurate and derogatory credit information after a reasonable request by the Plaintiff;

   c. The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

   d. The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

   e. The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

    f. failing to block information in Plaintiff's credit report after Plaintiff identified it as information that resulted from identity theft;

    g. failing to promptly notify the Furnishers of information identified by Plaintiff as information that resulted from identity theft;

    h. The failure to take adequate steps to verify information each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer;

    i. The failure to provide notice of a dispute to the Furnishers or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnishers in response to a dispute;

    j. failing to provide the required notice related to reinserting a formerly deleted account;

    k. failing to provide the information required to be provided to Plaintiff related to reinserting a formerly deleted account; and

    l. failing to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's file and consumer reports, of information that was previously deleted.

136. As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

137. The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

138. In the alternative, the conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

139. Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## DEMAND FOR TRIAL BY JURY

140. Pursuant to FRCP 38, Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c) For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

d) For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e) For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

f) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), 15 U.S.C. § 1681o (a)(2) and 15 U.S.C. § 1640(a)(3); and

g) For any such other and further relief as this Court may deem just and proper.

Dated:  December 3, 2024

Respectfully submitted,

**GARIBIAN LAW OFFICES, P.C.**

 s/ Antranig Garibian
By: Antranig Garibian, Esq. (Bar No. 4962)
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE  19803
(302) 722-6885
ag@garibianlaw.com

**STEIN SAKS, PLLC**

*s/ Eliyahu Babad*
Eliyahu Babad, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x121
EBabad@SteinSaksLegal.com
*Pro Hac Vice Admission to be requested*

*Attorneys for Plaintiff*